UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CV-06-321-LRS |
| vs. | ) | |
| 4570 NAVARRE-COULEE ROAD, CHELAN, WASHINGTON, TOGETHER WITH ALL APPURTENANCES, FIXTURES, ATTACHMENTS, AND IMPROVEMENTS THERETO AND THEREUPON, | ) | Findings of Fact and Conclusions of Law |
| Defendant. | ) | |

I. <u>Nature of the Proceedings and Statement of Jurisdiction</u>

On November 14, 2006, the United States filed the Verified Complaint for Forfeiture <u>In</u> <u>Rem</u> and Notice of Complaint for Forfeiture. CR 1.

On November 16, 2006, the United States served a copy of the Notice of Complaint for Forfeiture, Verified Complaint for Forfeiture <u>In</u> <u>Rem</u>, and Lis Pendens, via certified mail, upon Al Mendoza, as evidenced by the Certificate of Service of Notice by Mail filed herein on November 16, 2006. CR 5.

On November 21, 2006, the U.S. Marshals Service posted the Defendant real property with copies of the Verified Complaint for Forfeiture <u>In</u> <u>Rem</u>, Notice of Complaint for Forfeiture, and Lis Pendens, as evidenced by the USM-285 filed herein on November 29, 2006. CR 7.

On November 21, 2006, the U.S. Marshals Service personally served Patricia Mendoza with copies of the Verified Complaint for Forfeiture <u>In</u> <u>Rem</u>,

Findings of Fact and Conclusions of Law - 1

Notice of Complaint for Forfeiture, and Lis Pendens, as evidenced by the USM-285 filed herein on November 29, 2006. CR 7.

On November 27, 2006, the U.S. Marshals Service personally served Rick Mendoza with copies of the Verified Complaint for Forfeiture In Rem, Notice of Complaint for Forfeiture, and Lis Pendens, as evidenced by the USM-285 filed herein on November 29, 2006. CR 7.

On November 29, and December 6 and 13, 2006, the Notice of Complaint for Forfeiture was published in the Leavenworth Echo/Cashmere Valley Record, a newspaper of general circulation in Chelan County, Washington, as evidenced by the United States Marshals Service Form USM-285 filed herein on December 27, 2006. CR 21. At the latest, the time for filing a claim expired on January 12, 2007. Supplemental Rules for Certain Admiralty and Maritime Claims C(6)(a).

On December 15, 2006, Al Mendoza filed a claim to the Defendant real property. CR 11. On January 9, 2007, Al Mendoza filed a response to the Complaint. CR 29. To date, no other claims have been filed.

On January 31, 2007, a Clerk's Orders of Default was entered against Patricia Mendoza, forfeiting her interest in the Defendant real property to the United States. CR 31.

On January 31, 2007, a Clerk's Orders of Default was entered against Rick Mendoza, forfeiting his interest in the Defendant real property to the United States. CR 32.

On March 28, 2008, the Court granted partial summary judgment in favor of the United States, holding that the Plaintiff met its initial burden proving that the Defendant real property is subject to forfeiture to the United States.

The issue reserved for trial was whether or not the Claimant met his burden to prove he is an "innocent owner" in accordance with 18 U.S.C. § 983.

This Court has jurisdiction over this matter by virtue of 28 U.S.C. §1345 and §1355.

## II. Findings of Fact

On June 16, 2008, a bench trial was held in this matter to resolve whether the Claimant had an ownership interest in the Defendant real property. The Claimant Al Mendoza, Rick Jaydin Mendoza, Elodio Mendoza Mendoza, Juan Bravo-Guzman, Rovvie Ramirez, Joanna "Jode" Holman Allison,[1] and Patricia Mendoza testified. Upon review of the testimony, exhibits, and the entire record, the Court hereby finds the following:

Rick and Patricia Mendoza purchased the property in December 1995 for $73,600. Exh. 22 (Deed of Trust).

Sometime early in 2002, a manufactured home (also referred to as trailer) on the subject property, which was the residence of Rick and Patricia Mendoza was completely destroyed by a fire. Rick Mendoza testified that he received approximately $80,000 ($50,000 for the trailer and $30,000-$40,000 for personal property contents) in insurance proceeds. Rick Mendoza's used the insurance proceeds to pay off the underlying purchase price of the subject property as well as for other purposes and did not transfer funds to Al Mendoza therefrom.

On November 12, 2002, Rick and Patricia Mendoza transferred the subject property to Al Mendoza by Quitclaim Deed for "$1.00 and good consideration." Exh. 23 (Quitclaim Deed); SMF 47. Rick Mendoza testified that he transferred the property to Al Mendoza because he couldn't afford to have the property "cleaned-up" after the 2002 fire.

In 2002, Al Mendoza testified he took out a loan and wrote a check for $7,500, leaving the payee line blank, for clean-up of the subject property. Rick Mendoza testified that he used most of the $7,500 to clean-up the property, which took a couple of weeks and used the remainder for other expenses.

---

[1] This government witness was taken out of sequence based on her limited availability and for the purpose of possible rebuttal testimony. Because the claimant's claim was dismissed at the close of his case, the testimony was not considered by the Court.

Findings of Fact and Conclusions of Law - 3

In or about 2004, after the property was quit-claimed to Al Mendoza, Rick Mendoza began building a rock wall around the entire subject property. Rick Mendoza also installed two security gates, paved a driveway and built a 30' x 40' residence (garage/residence) on the subject property. In 2005, Rick Mendoza was billed and paid for well drilling and pump-related items. Rick Mendoza's friend Robbie Ramirez testified that in 2006 he (Robbie Ramirez), was involved in surveying the subject property to determine where Rick Mendoza could construct a new home. None of the improvements made to the property following transfer by quit claim deed were discussed with Al Mendoza prior to their initiation nor did Rick Mendoza obtain Al Mendoza's consent thereto before proceeding. Additionally, Al Mendoza did not learn of the improvements until well after they were made (as is discussed further in these findings).

Al Mendoza has never lived at or on the Defendant real property. According to Al Mendoza, he did not spend any time there in 2003, 2004, or 2005, because he was stationed abroad. SMF 62. According to Al Mendoza, he visited the real property for approximately 1 month in July/August 2006 and for a few days in July 2007. SMF 63 and 64.

In or about September 2006, Al Mendoza gave a $13,500 check to Rick Mendoza. The check, however, was never cashed by Rick Mendoza and was later seized by the Drug Enforcement Agency at the time the search warrant was executed at the subject property when Rick Mendoza was arrested on November 23, 2006.

Al Mendoza has never paid for the utilities, phone, maintenance, garbage collection, or other typical ownership expenses for the real property. SMF 71. Al Mendoza stated that he paid the property taxes on the premises in 2006 and 2007 in cash when he was in Chelan, Washington. SMF 69. However, there is no evidence offered in the form of receipts to prove that Al Mendoza actually provided the funds for the taxes nor deducted them on any personal IRS tax return

Findings of Fact and Conclusions of Law - 4

as he would ordinarily be entitled to do. Elodio Mendoza, the father of Rick Mendoz and Al Mendoza, testified that he (Elodio) paid property taxes on the premises from time to time and was occasionally reimbursed for monies expended for this purpose. Al Mendoza testified that the taxes were paid in cash and he had no receipts. SMF 70.

Al Mendoza also stated that he paid for home insurance on the property beginning in 2006. Al further stated that the property was uninsured from 2003 until 2006, during which time Rick Mendoza was living on the property . SMF 67 and 72.

Al Mendoza stated that he and Rick Mendoza did not talk about Rick Mendoza moving back onto the Defendant real property located at 4570 Navarre-Coulee Road prior to his move. SMF 30. Al Mendoza also stated that he was unaware of the residence and other improvements to the Defendant real property until he visited there in July 2006. SMF 34. Al Mendoza further stated that he did not give permission for Rick Mendoza to build the two story house or make other improvements to the Defendant property. SMF 33.

In addition, except as otherwise noted herein, Al Mendoza did not and has not paid Rick Mendoza for acquisition of the real property. Al Mendoza stated that Rick Mendoza transferred the Defendant real property to him in 2002 because Rick Mendoza had, in approximately 1992, destroyed a 1988 truck valued at $15,000.00[2] of Al Mendoza's when Al Mendoza was serving in the military and was stationed in Korea. Al Mendoza stated that Rick Mendoza told Al Mendoza that he would pay Al Mendoza back for the destroyed vehicle. SMF 28 and 47. No documentation concerning ownership and value of the truck has been submitted incident to these proceedings.

---

[2] Al Mendoza testified that he received approximately $11,000-$12,000 as insurance proceeds from his insurance company USAA for the destroyed truck which he had acquired for $18,000 approximately 3 years earlier.

Findings of Fact and Conclusions of Law - 5

The uniform innocent owner provision of the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983(d), distinguishes between owners whose property interest was in existence at the time the illegal conduct giving rise to the forfeiture occurred, and owners who show interest was acquired after the conduct giving rise to the forfeiture occurred.

In this case, Claimant Al Mendoza's interest in the Defendant real property arose on November 12, 2002, when the quit claim deed was recorded. SMF 21. The Second Superseding Indictment alleges that Rick Mendoza engaged in a conspiracy to distribute controlled substances that began on a date unknown, but by on or about December 1, 2005. Therefore, Claimant Al Mendoza's interest arose prior to the alleged criminal conduct giving rise to the forfeiture. SMF 1.

18 U.S.C. § 983(d)(2)(A), states the following:

(2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to the forfeiture took place, the term "innocent owner" means an owner who-

(i) did not know of the conduct giving rise to the forfeiture; or

(ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

It is also clear on this record that Al Mendoza wondered how his brother Rick Mendoza was financing the construction and improvements made to the Defendant real property. SMF 79 and 80. The Court, however, as discussed and noted below, finds that Al Mendoza is a "nominee" who did not exercise dominion and control over the property and had no knowledge of the drug-related activity occurring thereon.

### III. Conclusions of Law

Under CAFRA, a claimant may defeat a forfeiture by showing that he is an "innocent owner." Section 983(d) sets forth the requirements of the innocent

Findings of Fact and Conclusions of Law - 6

owner defense, which must be proven by a preponderance of the evidence. 18 U.S.C. § 983(d)(1). A threshold question is whether the claimant qualifies as an owner. Subsection 983(d)(6)(A) defines "owner" as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." Subsection 983(d)(6)(B) identifies three specific categories which are not owners:

> (i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
> (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized;
> (iii) a nominee who exercises no dominion or control over the property.

Id. See, United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1014 (8th Cir., 2003).

The Court finds Claimant cannot prove by a preponderance of the evidence that he is an innocent owner as defined in 18 U.S.C. § 983(d)(1) and that he is a "nominee" under the statute cited above.

## IV. Conclusion

At the conclusion of the bench trial, the Court found that the sole Claimant Al Mendoza had standing to claim the subject property and had demonstrated he possessed mere legal title acquired through a quit claim deed. The Court, however, found that Al Mendoza did not meet his burden of proof demonstrating that his interest was more than nominal. Additionally, the value of the real property received in the form of a quit claim deed by Al Mendoza at all times material far exceeded the amount of any debt which Rick Mendoza would have owed to Al Mendoza and such debt, if it existed, would have been barred by the Statute of Limitations due to the passage of time from the destruction of the vehicle (approximately 1992) and the date of the quit claim deed. The evidence revealed that Rick Mendoza exercised full dominion and control over the subject property

Findings of Fact and Conclusions of Law - 7

consistent with being a true owner of an interest in the property. The Court further determined that possession of mere legal title by Al Mendoza, who did not exercise ongoing dominion and control over the property, was insufficient to meet the requirements to make him an "innocent owner." In short, the quit claim deed to Al Mendoza did not transfer dominion and control and was intended by Rick Mendoza to insulate the property from his creditors as well as others. By his words and actions, Rick Mendoza maintained dominion and control over the property at all times material to this proceeding.

Consequently, the United States is directed to present a Final Order of Forfeiture for review by the Court in order for the Defendant real property located at 4570 Navarre-Coulee Road, in Chelan, Washington, to be condemned and forfeited to the United States of America. Entry of final judgment shall, however, abide a further ruling on the government's motion to compel (Ct. Rec. 110) taken under advisement incident to the Court's request for additional written responses from the parties concerning the same.

IT IS SO ORDERED. The District Court Executive is directed to enter this Order and provide a copy of this Order to counsel. The Clerk's Office is directed to maintain the file in open status pending entry of a Final Order of Forfeiture.

DATED this 27th day of June, 2008.

*S/ Lonny R. Suko*
_____
Lonny R. Suko
United States District Judge